[Cite as *State v. Harvey*, 2022-Ohio-2319.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case Nos. 21CA3, 21CA4 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| AARON HARVEY, | : | |
| Defendant-Appellant. | : | **RELEASED 6/29/2022** |

_____

APPEARANCES:

Steven Eckstein, Washington Court House, Ohio, for appellant.

Amy Bean, Assistant Law Director for City of Marietta, Marietta, Ohio, for appellee.
_____

Hess, J.

{¶1}     Aaron Harvey appeals his conviction for domestic violence and violating a protection order. He contends that his right to a speedy trial was violated, his convictions were based on insufficient evidence and were against the manifest weight of the evidence, and his trial counsel was ineffective for failing to raise his speedy-trial violation in the trial court.

{¶2}     We reject his arguments and overrule his assignments of error. Harvey forfeited his speedy-trial claim by failing to file a motion to dismiss on that basis prior to trial. Additionally, we find that his statutory speedy-trial rights were not violated. He was tried within the 90-day time limit after accounting for several tolling events in the record. Therefore, his trial counsel was not deficient for failing to raise a speedy-trial violation. Finally, his convictions for domestic violence and violation of a protection order were based

on sufficient evidence and were not against the manifest weight of the evidence. We affirm the trial court's judgment.

## I. PROCEDURAL HISTORY

{¶3}     On September 4, 2020, Harvey was charged with two incidents of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor, arising from a dispute involving his wife and son. On October 5, 2020, Harvey was charged with violating a protection order in violation of R.C. 2919.27, a first-degree misdemeanor.

{¶4}     After a bench trial, Harvey was found not guilty of one charge of domestic violence involving his son, guilty of the second charge of domestic violence involving his wife, and guilty of violation of a protection order. Harvey was fined $200 plus court costs, sentenced to a total consecutive 303 days of jail time, of which all but three days was suspended, and given a two-year community control sentence.

## II. ASSIGNMENTS OF ERROR

{¶5}     Harvey assigns the following errors for our review:

1.      Harvey's speedy trial rights were violated in contravention of the Sixth Amendment to the United States Constitution and the Ohio Constitution. (Feb. 26, 2021 Entries).

2.      Harvey's convictions are based on insufficient evidence, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 & 16, Article I of the Ohio Constitution. (Feb. 26, 2021 Tr. 15-17); (Feb. 26, 2021 Entries).

3.      Harvey's convictions are against the manifest weight of the evidence in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 & 16, Article I of the Ohio Constitution. (Feb. 26, 2021 Tr. 15-17); (Feb. 26, 2021 Entries).

4.      Aaron Harvey received ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. (Feb. 26, 2021 Entries). (February 26, 2021 Tr. 3-9).

## III. LEGAL ANALYSIS

### A. Speedy Trial Rights

{¶6}     Harvey contends that because he was not brought to trial within 90 days after his arrests or service of summonses, he has established a prima facie case for a speedy trial violation under R.C. 2945.73 and the burden shifted to the state to prove that some exceptions applied to toll the time. The state argues that Harvey waived this issue because he failed to raise it in the trial court. Additionally, the state argues that Harvey's argument is based solely on the fact that the bench trial was held more than 90 days after the filing of the complaints. The state contends that there were several tolling entries filed and other motions filed by Harvey's attorney which by their nature tolled the time.

{¶7}     Harvey's "failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal." *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 37; *State v. Smith*, 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, ¶ 15; *State v. Campbell*, 4th Dist. Ross No. 06CA2932, 2007-Ohio-4402, ¶ 20 ("It is well-settled that the failure to raise a speedy trial issue prior to the commencement of trial waives that issue on appeal"); *State v. Simms*, 10th Dist. Franklin Nos. 05–AP–806 and 05AP-807, 2006-Ohio-2960, ¶ 10 (by not raising his speedy-trial claim in the trial court, "appellant waived all but plain error on his statutory claims"); R.C. 2945.73(B) ("Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code").

{¶8}    Because Harvey does not claim plain error on appeal, we need not consider it. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17–20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 25, citing *Wright v. Ohio Dept. of Jobs & Family Servs.*, 9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, ¶ 22 ("when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an argument on his behalf"). However, because Harvey's fourth assignment of error is also based upon an alleged violation of his speedy trial rights, we will discuss the merits of that issue below.

{¶9}    Because Harvey forfeited his statutory speedy-trial claim by failing to file a motion to dismiss on that basis at or prior to the commencement of trial and he fails to argue plain error on appeal, we overrule his first assignment of error.

B. Ineffective Assistance of Counsel

1. Standard of Review

{¶10}   In his fourth assignment of error Harvey contends that his trial counsel provided ineffective assistance to him by failing to raise his speedy-trial rights. To prevail on his claim of ineffective assistance of counsel, Harvey must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Smith*, 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, ¶ 18. The defendant has the burden of proof

because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

### 2. Failure to File Motion to Dismiss on Speedy-Trial Violation

{¶11} Harvey contends that his trial counsel was ineffective for not raising his speedy-trial claim at or before the commencement of trial. To show that counsel provided ineffective assistance of counsel by failing to file a motion to dismiss for speedy-trial violations, "the defendant must show that the motion would have been successful and the case would likely have been dismissed." *South Euclid v. Schutt*, 2020-Ohio-3661, 154 N.E.3d 1184, ¶ 13 (8th Dist.). "Counsel cannot be deficient for failing to file a fruitless motion." *State v. Cottrell*, 4th Dist. Ross. No. 11CA3241 and 11CA3242, 2012-Ohio-4583, ¶ 8.

{¶12} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. This guarantee is implemented by R.C. 2945.71, which provides specific statutory time limits within which a person must be brought to trial. *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10. R.C. 2945.71(B)(2) requires that a person against whom a first-degree misdemeanor charge is pending shall be brought to trial "within ninety days after the person's arrest or the service of summons."

{¶13} Harvey was arrested for domestic violence on September 4, 2020, and his trial commenced 172 days later for speedy-trial computation purposes, on February 23, 2021. He was arrested for violating a protection order on October 5, 2020 and his trial

commenced 141 days later on February 23, 2021. *See State v. Smith,* 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, fn. 1 ("the day of arrests does not count when computing speedy-trial time"). Because these each exceeded the 90–day period, Harvey presents a prima facie speedy-trial violation. *See, e.g., State v. Squillace*, 10th Dist. Franklin No. 15AP-958, 2016-Ohio-1038, ¶ 14. Once a defendant establishes a prima facie case for dismissal, the burden shifts to the state to prove that the time was sufficiently tolled to extend the period. *State v. Smith*, 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, ¶ 24; *Schutt* at ¶ 19 ("Because Schutt has established a prima facie case for dismissal, we must examine the record to determine whether the speedy trial time was extended").

{¶14} "R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial." *State v. Ramey,* 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 24. The pertinent tolling provisions here are R.C. 2945.72(B) ("* * * any period during which the accused is physically incapable of standing trial"); R.C. 2945.72(E) ("Any period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused"); and R.C. 2945.72(H) ("The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion").

{¶15} In his domestic violence case, Harvey requested and was granted a 14-day continuance due to his illness with COVID-19. He filed two requests for continuances, one which partially overlapped with his COVID-19 extension, for a net total 41-day delay, and two joint requests for continuances which resulted in a total 84-day delay. He filed two additional motions to modify the temporary protective order which resulted in an

overlapping 19-day delay. Additionally, the state filed a motion to continue the bench trial which had been set for January 26, 2021 that resulted in a 28-day delay, which defense counsel signed as "approved." Thus, according to the record and accounting for overlapping delays, if the state's continuance is reasonable, 167 of the 172 days were tolled under R.C. 2945.72 (B), (E), and (H), and only five days had passed.

{¶16} In his case for violating a protection order, Harvey filed a request for a continuance that resulted in a 26-day delay and sought two joint continuances that resulted in an 84-day delay.[1] He filed two additional motions to modify the temporary protective order which resulted in an overlapping 19-day delay. Additionally the state filed a motion to continue the bench trial that resulted in a 28-day delay, which defense counsel signed as "approved." Thus, according to the record, if the state's continuance is reasonable, 138 of the 141 days were tolled under R.C. 2945.72(E) and (H), and only three days had passed.

{¶17} Harvey's requests for continuances and motions tolled the time for trial.[2] R.C. 2945.72(H) tolls the time for "any continuance granted on the accused's own motion." Where a trial court must reschedule a trial because of a motion of the accused, regardless of whether it is styled as a motion for a continuance, the entire time between the motion

---

[1] One of the joint continuances was filed only in the domestic violence case but it was filed three days after his case for violating a protection order was filed and states that the continuance is for "negotiation and to get the new case to try and resolve everything together." Therefore, that joint continuance applies in both cases equally. *See Cottrell* at ¶ 14, citing *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319; *see also State v. Jones*, 2019-Ohio-783, 132 N.E.3d 1254, ¶ 18-25 (8th Dist.).

[2] Harvey also made demands for discovery which tolled the speedy-trial time. However, we cannot determine from the record when the state responded to these demands. A demand for discovery constitutes a tolling event and courts have generally interpreted 30 days to constitute a reasonable period to respond. *See State v. Smith,* 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, ¶ 23. Because both cases were tried well within the 90-day period, the discovery tolling calculation is not relevant, but would only further cut against Harvey's argument.

and the rescheduled trial date is a delay attributable to a motion filed by the accused under R.C. 2945.72(E). *State v. Phillips*, 4th Dist. Highland No. 09CA13, 2009-Ohio-7069, ¶ 25.

{¶18} After Harvey asked for a continuance and the trial was set for January 26, 2021, the State filed a motion in mid-January for a continuance of the trial scheduled on January 26, 2021 for several reasons, including that they would be extremely short staffed during the week prior to the scheduled trial. A trial court may grant a continuance of a trial date beyond the statutory speedy trial time limit, so long as the continuance is reasonable under the circumstances. R.C. 2945.72(H) provides that speedy trial time tolls for the period of any "reasonable continuance granted other than upon the accused's own motion." The reasonableness of a continuance is determined by examining the purpose and length of the continuance as specified in the record. *State v. Smith,* 4th Dist. Ross No. 10CA3148, 2011-Ohio-602, ¶ 27-28, citing *State v. Lee*, 48 Ohio St.2d 208, 209–210, 357 N.E.2d 1095 (1976). Based on the record before us, because of the number of defense continuances previously granted, the trial court's grant of the state's continuance did not extend the trial date beyond the statutory speedy trial time, nor can we find that it was unreasonable under the circumstances. *See State v. Phillips*, 4th Dist. Highland No. 09CA13, 2009-Ohio-7069, ¶ 28. Moreover, Harvey does not argue that the state's continuance extended the trial date beyond the statutory speedy-trial time, that it was unreasonable, or that it should be attributed to the state. Even if we charged the state with the 28-day continuance in each of the cases, the domestic violence case would have been tried on day 33 and the violation of the protection order case would have been tried on day 31, each well within the 90-day statutory speedy trial time.

**{¶19}** Because the speedy-trial period was tolled numerous times in both cases, the trial was held at most within 33 days of his September 4, 2020 arrest and 31 days of his October 5, 2020 arrest. Harvey was tried within the applicable 90–day period. Therefore, there was no speedy trial violation.

**{¶20}** Because a motion to dismiss based on a claimed speedy-trial violation would have been meritless, Harvey's trial counsel did not provide ineffective assistance of counsel by failing to file a motion on this basis. *See State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241, 11CA3242, 2012-Ohio-4583, ¶ 20 ("Because Cottrell's statutory speedy trial rights were not violated, a motion to dismiss on that basis would have failed. The law does not require counsel to take a futile act, so trial counsel's failure to file a motion to dismiss was not deficient"). We overrule Harvey's fourth assignment of error.

## C. Insufficiency of the Evidence & Manifest Weight of the Evidence

**{¶21}** In his second assignment of error, Harvey contends that there was insufficient evidence to support his conviction for violating a protection order because he went to his wife's house only after knowing that she would not be there. Therefore, he "lacked the necessary scienter, or mens rea, to commit the crime of violating a protection order." He contends that there was insufficient evidence to support his conviction for domestic violence against his wife because he was acting in self-defense.

**{¶22}** In his third assignment of error, Harvey contends that his convictions were against the manifest weight of the evidence because his wife's testimony is uncorroborated and not credible because she was engaged in divorce proceedings against him. He argues that his conviction for domestic violence is against the manifest weight of the evidence because he engaged in self-defense and because there was a lack of evidence

corroborating injuries to his wife. For his conviction for violating a protection order, he argues it is against the manifest weight of the evidence for the same reason he contends it lacked sufficient evidence – his wife was not home at the time.

### 1. Standard of Review

{¶23} "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness. *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 17. "That limited review does not intrude on the jury's role 'to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, 577 U.S. 237, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319, 99 S.Ct. 2781.

{¶24} By contrast, in determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. To satisfy this test,

the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus (1988).

**{¶25}** When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *State v. Pollitt,* 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15. " 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *State v. Lombardi,* 9th Dist. Summit No. 22435, 2005-Ohio-4942, ¶ 9, quoting *State v. Roberts,* 9th Dist. Lorain No. 96CA006462, 1997 WL 600669 (Sept. 17, 1997); *State v. Smith*, 2020-Ohio-5316, 162 N.E.3d 898, ¶ 30-32 (4th Dist.).

2. Conviction for Violating Protection Order

**{¶26}** R.C. 2919.27 governs protection orders and provides: "(A) No person shall recklessly violate the terms of any of the following: (1) A protection order issued or consent agreement approved pursuant to section 2919.26 * * *."  "Reckless" is defined in R.C. 2901.22(C) as:

> (C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

**{¶27}** Here Harvey concedes that there was a valid protection order in place for his wife and that he intentionally went to her residence. However, he argues that because he knew his wife would not be there, he was not acting recklessly. He relies on Section 4

of the protection order that states in relevant part, "**DEFENDANT SHALL STAY AWAY FROM THE PROTECTED PERSONS NAMED IN THIS ORDER**, and shall not be present within 500 feet * * * of any protected persons whereover those protected persons may be found, or any place the Defendant knows or should know the protected persons are likely to be, **even with Petitioner's permission**." (Emphasis sic.)

{¶28}   The state argues that Harvey reads the protection order too narrowly. The protection order also includes Section 1, which states, "**DEFENDANT SHALL NOT ENTER** or interfere with the residence, school, business, place of employment, day care centers, or child care providers of the protected persons named in this Order, including the buildings, grounds, and parking lots of these locations. Defendant may not violate this Order **even with the permission of a protected person**." (Emphasis sic.)

{¶29}   The protection order required Harvey to stay away from any place he knows or should know his wife may be found, such as a gym, place of worship, or other location not specifically identified in the protection order. And, the protection order specifically required Harvey not to enter his wife's residence and its grounds, which would include the driveway, regardless of whether she would be present or gave permission.

{¶30}   At the trial, the state introduced the protection order into evidence. Harvey's son testified that while the protection order was in place, Harvey followed him home from school and drove down Harvey's wife's driveway. Harvey's son videotaped the incident on his cellphone and the videotape was introduced into evidence. Harvey also testified that he knew about the existence of the protective order, but he approached his wife's residence via the driveway because he "wasn't really thinking." On cross-examination, Harvey admitted he knew he was not to go to the residence, but he went there anyway

and initially lied about it to the police officer. The state introduced the recording of Harvey's interview with the officer.

**{¶31}** Harvey's argument that he was not "reckless" because he knew his wife was not home when he drove up the driveway ignores the plain language that bars him from entering her residence and its grounds under any circumstance, even if she is absent or gives permission. Here, Harvey not only acted recklessly, but intentionally. The state cites to a case in which an appellate court rejected the same argument that Harvey makes. *See State v. Zobel*, 5th Dist. Tuscarawas No. 2016-AP-03-0019, 2016-Ohio-5751, ¶ 43-44 (rejecting defendant's argument that he did not act reckless when he went onto the protected person's property because she was not in her home or likely to be in her home when he went there).

**{¶32}** After reviewing the evidence, we conclude that Harvey's conviction for violating the protection order is not against the manifest weight of the evidence; the trier of fact did not lose its way when it convicted Harvey of this charge. Harvey admitted he knew about the protection order. The protection order requires Harvey to stay away from his wife's residence and grounds, regardless of whether she is there or not. Both Harvey and his son testified that Harvey drove up the driveway of the residence. Harvey testified that he knew that he was not allowed to go to the residence but "wasn't really thinking" when he did it. Harvey's son videotaped the incident and the state introduced the videotape into evidence at trial. After reviewing the evidence, we are not persuaded that the trier of fact lost its way and created a manifest miscarriage of justice. Our review of the record reveals that the state presented substantial evidence from which the trier of fact could conclude, beyond a reasonable doubt, that Harvey was guilty

of violating the protection order. *See generally State v. Davidson,* 4th Dist. Ross No. 04CA2771, 2004-Ohio-6828, ¶ 14-19.

**{¶33}** Because Harvey's conviction is not against the manifest weight of the evidence, we necessarily conclude that the state offered sufficient evidence from which a reasonable trier of fact could find that Harvey recklessly violated the protection order when he drove up the driveway of his wife's residence. After viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could find that Harvey recklessly violated the protection order. The testimony of Harvey and his son, as well as the videotape of the incident establishes that Harvey knew of the protection order and went to his wife's residence in violation of it.

**{¶34}** We overrule Harvey's second and third assignment of error as it relates to his conviction for violation of a protection order.

### 3. Conviction for Domestic Violence

**{¶35}** Harvey contests his conviction for domestic violence involving his wife because he argues he was acting in self-defense. He argues that he testified that his actions towards his wife were defensive because she was acting aggressively toward him. In addition, he challenges his conviction as against the manifest weight of the evidence because he argues that there was a lack of corroborating injuries to his wife.

**{¶36}** Domestic violence is prohibited by R.C. 2919.25(A) which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Under R.C. 2901.05(B)(1) a person is allowed to act in self-defense and the state must prove beyond a reasonable double that the accused did not act in self-defense:

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶37} An affirmative defense, such as self-defense, does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury. *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.3d 493, ¶ 15 (4th Dist.), citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032. Generally, "the test for sufficiency of the evidence does not apply to affirmative defenses because the focus is solely upon the substantive elements of the charged offense – not the strength of the defendant's justification for his actions." *Id.*

{¶38} Here, Harvey does not challenge the sufficiency of the state's evidence on the substantive elements of domestic violence. In his brief he appears to concede that the state presented sufficient evidence that he knowingly caused or attempted to cause physical harm to his wife and our review of the evidence as discussed below finds that the state did provide sufficient evidence of the elements of this offense beyond a reasonable doubt. However, Harvey contends that the state's evidence was insufficient to prove that

he did not use self-defense.[3] Implied by this argument is his belief that he produced evidence that tends to support that he used force in self-defense.

**{¶39}** On March 28, 2019, R.C. 2901.05 (the statute governing self-defense) was amended. As we explained in *Tolle, infra,* the amended statute "shifts the burden of proof on the affirmative defense of self-defense from the defendant to the prosecution, provided that 'there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence.' " *State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 18. We review de novo whether evidence of self-defense sufficed to shift the burden of persuasion to the prosecution. *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 5; *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 38 (11th Dist.) ("[W]hether sufficient evidence has been presented to raise an affirmative defense of self-defense is a question of law.").

**{¶40}** Under R.C. 2901.05(B)(1), to place the burden on the State to prove beyond a reasonable doubt that an accused did not act in self-defense, the defendant must first present evidence that "tends to support that the accused person used the force in self-defense." For evidence to tend to support self- defense, it must be sufficient to raise a

---

[3] A number of appellate districts in Ohio have reviewed whether the state disproved self-defense under the "sufficiency of the evidence" standard. *State v. Shropshire*, 2d Dist. Montgomery No. 29108, 2021-Ohio-3848, ¶18; *State v. Vandergriff*, 1st Dist. Hamilton No. C-200282, 2021-Ohio-3230, ¶ 10; *State v. Rengert*, 5th Dist. Delaware No. 19CAA10-0056, 2021-Ohio-2561, ¶ 48; *State v. Flory,* 3d Dist. Van Wert No. 15-20-02, 2020-Ohio-5136, ¶ 37; *State v. Carney*, 10th Dist. Franklin No. 19AP-402, ¶ 32. However, in *State v. Messenger,* 2021-Ohio-2044, 174 N.E.3d 425, ¶ 45 (10th Dist.), the Tenth District Court of Appeals determined that a challenge to the state's proof relative to the defendant's claim of self-defense is not subject to a review under the sufficiency of evidence standard and instead applied a "manifest weight of the evidence" review. The Supreme Court of Ohio accepted review of *State v. Messenger* for the proposition of whether self-defense claims may be reviewed on direct appeal for sufficiency of the evidence and that matter is currently pending. *State v. Messenger*, Case No. 2021-0944. Because we find that Harvey did not satisfy his burden of production on self-defense and thus failed to shift the burden to the state to disprove self-defense, we never reach the issue of whether the state's evidence disproving self-defense is reviewed for sufficiency of the evidence or for manifest weight of the evidence.

question in the mind of a reasonable juror under the existing standard set forth in *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978). *Tolle* at ¶ 24; *Petway* at ¶ 69 ("the 'tends to support' standard under the amended statute is not substantively different than the Supreme Court of Ohio's standard in *Melchior*").

> In *Melchior*, the court articulated the defendant's burden of production in the context of the presumption of innocence recognized in R.C. 2901.05(A) that "[e]very person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt." At the time *Melchior* was decided, the prosecution had the burden of disproving self-defense if the defendant came forward with sufficient evidence to raise it. Thus, the court stated that for the defendant to meet his or her burden of production, there must be evidence presented that was sufficient to raise a reasonable doubt of guilt based on a claim of self-defense. As rephrased by the court in its syllabus, there must be "sufficient evidence, which if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of [self-defense]."
>
> *                 *                 *
>
> The amended statute essentially returns Ohio law to the state in which it existed when *Melchior* was decided. Although the language of the amended statute is more direct than in *Melchior*, the logic is the same. For the defendant to meet his or her burden of production, evidence must be presented that "tends to support that the accused person used the force in self-defense." R.C. 2901.05(B)(1). The prosecution must now disprove at least one of the elements of self-defense beyond a reasonable doubt. Otherwise, the prosecution has not overcome the presumption of innocence by proving the defendant's guilt beyond a reasonable doubt.
>
> Thus, the standards set forth by the Supreme Court of Ohio in *Melchior* and by the legislature in the amended statute are equivalent. (Citations omitted.)

*State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 70-73 (11th Dist.).

{¶41} The elements of self-defense are: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *Tolle* at ¶ 25; *State v. Barnes*, 94 Ohio

St.3d 21, 24, 759 N.E.2d 1240 (2002); *State v. Ferrell*, 2020-Ohio-6879, 165 N.E.3d 743, ¶ 25, 26 (10th Dist.).

{¶42} The amended statute does not affect the burden of production—it remains with the defendant. Subsection (A) imposes upon the defendant "[t]he burden of going forward with the evidence of an affirmative defense." R.C. 2901.05(A). The prosecution does not assume the burden of persuasion until the defendant first meets his burden of production. As a result, Harvey must present evidence that creates a reasonable doubt as to each element of self-defense. *Petway* at ¶ 52 ("Since the elements of self-defense are cumulative, the defendant's failure to show legally sufficient evidence raising an issue on either element warrant[s] the refusal of a self-defense instruction."); *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 22 (11th Dist.) ("in order to be entitled to an instruction on self-defense, a defendant is required to present some evidence as to each of the three elements").

{¶43} The state presented the following evidence of the domestic violence incident that occurred on September 4, 2020. Harvey's 13-year-old son testified that that morning he and his mother were going to drive to school but Harvey got into the car. Harvey's wife and son repeatedly told Harvey to get out of the car and an argument over the son's cellphone erupted. Their son testified that Harvey pulled the phone from his hand and forced him onto the hood of the vehicle and put all of his weight on his son, causing his son pain. As Harvey's son screamed, Harvey's wife got out of the vehicle and came around to the side where Harvey was. Harvey's son testified that he was "thrown aside" and his mother was face up on the hood of the vehicle, then face down, then thrown on the ground. Harvey's wife tossed their son the keys and cellphone and he called 9-1-1.

Their son testified that he and his mother got into the vehicle and locked the doors until the police arrived.[4] The state introduced a recording of the 9-1-1 call into evidence.

**{¶44}** Harvey's wife also testified about the September 4th incident. She testified that earlier that morning Harvey and her son were talking loudly because her son was unhappy that Harvey had put parental restrictions on his phone. Shortly thereafter she got into the car to take their son to school. Harvey asked to go with them, but his wife said she did not want him to come along because he had been harassing her all week about her intentions to separate and divorce. Harvey's wife testified that Harvey got upset and got into the back seat of her car anyway. He refused to get out and their son, who was not yet inside the car, also asked him to get out of the car. Harvey asked their son to give Harvey his cellphone. Harvey's wife testified that she did not see exactly what happened because the post between the windshield and the door blocked her vision, but the next thing she saw was Harvey pinning their son face down with one arm behind his back on the hood of the other car that was parked in the drive, "He had him pinned down with his leg up against the back of [their son's] back and his left arm down on [their son's] back." She heard their son yelling that Harvey was hurting him, so "that's when I came around to here and grabbed a hold of Aaron to try to pull him off * * *." She testified that their son got away but then Harvey pinned her on the vehicle and then she ended up on the ground. She testified that she sustained red marks on her arm and neck and later she went to the emergency room because she had pain and red marks on her abdomen where she hit the

---

[4] The record was somewhat confusing and ambiguous concerning the types of vehicles involved. There were at least three vehicles referenced in Harvey's, the wife's, and the son's testimonies. Not part of the record was a demonstrative exhibit of the vehicles created by Harvey's son and references to it in the transcript involved several unhelpful references to witnesses "indicating." Nevertheless, we find any discrepancies in references to the types of vehicles immaterial to the analysis of the issues before us.

hood of the car. Harvey's wife also testified that she was coughing and gasping a lot because Harvey had placed his thumb on her throat.

{¶45}   Harvey's wife testified that she told him twice that morning that she did not want Harvey going with her and their son, but his response was "this was my car, too" and he refused to leave the car until he got out to encounter their son. Harvey's wife testified that Harvey could have gone back into the house at any point:

> Q: Okay. Based on everything that was going on, at some point in time, could he have gone back in this house and gotten away from all of this?
>
> A. Yeah.
>
> Q. Okay. Did you and [their son] try to get away from this?
>
> A. We got in my car and locked the doors.
>
> Q. He was still outside after you locked the doors, outside the car?
>
> A. Yes.

{¶46}   Harvey then produced his testimony on self-defense. Harvey testified that in July 2020, prior to the September 4th incident, Harvey was punishing his son by taking away his cellphone and his son kicked him in the chest. Harvey testified that he and his wife called the Sheriff's Office and reported that their son was being unruly. Harvey told his son that the next time he got unruly about the cellphone and they had to call officers, his son would be taken to "juvy." Harvey testified that on September 3, 2020, the evening before the incident, he discovered a disturbing photo on his son's phone. Harvey placed parental blocks on the phone. The next morning, Harvey told their son about the restrictions and their son became belligerent. Harvey testified that they all three walked out to the car and he and his wife got into the car. Their son told him to get out of the car and Harvey told their son to give him his cellphone. Harvey testified that his wife also

instructed their son to give Harvey the cellphone. Harvey got out of the car and approached their son, who "raised his left arm to try to hit me. And as he tried to hit me, I took it with my arm and I turned up against the body."

**{¶47}** Harvey testified that then his wife came around the car at him and he let his son go. His wife started attacking him, pulling at his shirt and scratching his chest. Harvey testified that he twice told her to let go and she would not, so he performed a "foot sweep to defend myself." Harvey testified that his wife fell to the ground. Then his son came back around and his wife started getting up. During all of this, the cellphone fell to the ground. His wife, standing now, refused to let go of him so he performed a second foot sweep, but lost his footing. His wife went into the bumper of the vehicle and he went into the fender. After that, his wife got into the vehicle and Harvey went into the house to change his shirt.

**{¶48}** Harvey testified that the physical altercation with his wife lasted approximately 45 to 60 seconds and at no point did he initiate contact with her. Instead, she initiated contact with him both times, the second time "because she was mad, because I had put her on the ground. * * * She reinitiated – she squeezed my arm, and gave me another scratch on my arm."

**{¶49}** On cross-examination Harvey testified that he weighs 418 pounds. He admitted that his wife told him to get out of the car and he argued with her instead of getting out. Harvey got out of the car to take their son's cellphone away and physically restrained his son against the hood of the vehicle so that he could seize the cellphone. He testified on cross-examination that his wife physically engaged with him but he did not know whether she was coming to the aid of their son or if she was just angry with him. He told

her twice to let go, she refused, so he did a foot sweep. After he performed the foot sweep, he did not go into the house to get away but continued to stay there.

**{¶50}** Harvey argues that his evidence of self-defense was that his wife "was acting aggressively toward him." However, even though he argues his wife was acting aggressively, he presented no evidence that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force. His wife used no weapon other than her hands against him, a 418-pound adult male. Harvey claims his wife grabbed his shirt and would not let go, yet this by itself is inadequate to create a reasonable doubt that he was under a threat of serious bodily harm from her or that his own use of such force was necessary to free himself. As a result, Harvey did not satisfy his burden of production to require the prosecution to disprove self-defense.

**{¶51}** After reviewing all the evidence set forth above in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of domestic violence beyond a reasonable doubt.  We reject Harvey's argument that there was insufficient evidence to support his conviction for domestic violence.

**{¶52}** We also reject Harvey's argument that his conviction for domestic violence was against the manifest weight of the evidence. He argues that his wife and son were both biased witnesses that should not be believed and that there was insufficient evidence to corroborate his wife's injuries. However, we find that his wife's and son's testimony were credible and consistent. Additionally, there was testimony that his wife had marks on her body and went to the emergency room for pain and marks that appeared on her abdomen. There was additional evidence that she had temporary respiratory difficulties because of

the pressure Harvey placed against her neck. The trial court had ample evidence to conclude that Harvey invoked violence against his wife. We cannot find that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Harvey's conviction for domestic violence was not against the manifest weight of the evidence.

**{¶53}** We overrule Harvey's second and third assignments of error as it relates to his conviction for domestic violence.

IV. CONCLUSION

**{¶54}** We overrule Harvey's four assignments of error and affirm his convictions.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court, Washington County to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the

appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
Michael D. Hess, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**